IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DAVID O'BRYAN REDD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 115-195 |
| | ) | |
| MAJOR JOHN BUSH, JR., et al. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Valdosta State Prison in Valdosta, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983, concerning events alleged to have occurred at the Burke County Jail ("BCJ") in Waynesboro, Georgia. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED** (doc. no. 27), final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

### I.   PROCEDURAL BACKGROUND

Because Plaintiff is proceeding *in forma pauperis*, the Court screened his original complaint and directed service of process on Defendants based on claims of excessive force and threats. (See doc. no. 10.) Defendants answered, and the case proceeded on those claims. (See doc. no. 15.)

On January 4, 2017, Defendants filed the present motion for summary judgment. (Doc. no. 27.) Plaintiff responded by requesting counsel, transcripts of his probation revocation

hearing, and "an extension of time if needed." (Doc. no. 29.) The Court denied Plaintiff's request for counsel and probation revocation transcripts, and construed Plaintiff's request for more time as a motion for extension of time to respond to Defendant's motion for summary judgment. (Doc. no. 30.) The Court granted Plaintiff an extension until February 15, 2017 to file his opposition to the summary judgment motion. (Id.) The Court warned Plaintiff that "[a]ny factual assertions made in the affidavits of the party moving for summary judgment will be deemed admitted by this Court pursuant to Loc. R. 7.5 and Fed. R. Civ. P. 56 unless Plaintiff contradicts the movant's assertions through submission of his own affidavits or other documentary evidence, and the motion for summary judgment will be granted on the grounds that said motion is unopposed." (Id. at 4.)

On February 14, 2017, Plaintiff filed a one-page document entitled "Motion to Object to the Summary of Judgment." (Doc. no. 31.) It contained no affidavits or documentary evidence, only the following conclusory statements:

1. Major John Bush did in fact threaten my life. And I have wittness [sic] to prove it. Jamie "Chambers" also he stated to Agent Boyld that he never said anything about killing me. "David Redd"

2. As for his sister J. Bush she stated on the stand that yes she busted my face. And that she did not go to the doctor.

3. And to show that Mr. Jerry Clark is not telling the truth. He stated on stand that all of this occurred on a Sunday. They also stated that I started a fire with a lighter. If this was the case, then why wasn't charges brought up on Mr. Redd for arson and where did he get the lighter? They all are lying and I pray to bring them to Justice.

(Id. at 1.)

Because Plaintiff did not contradict Defendants' factual assertions with any affidavits or other documentary evidence, the Court deems admitted all portions of Defendants' Statement of Undisputed Material Facts that have evidentiary support in the record. See Loc.

2

R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F.Supp.2d 1372, 1373 n.1 (S.D. Ga. 2000). However, this does not automatically entitle Defendants to summary judgment because as movants, they continue to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Thus, the Court will review the record "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

## II. FACTS

On August 3, 2014, Deputy Michael Murphy responded to a motor vehicle accident involving a Ford F-150. (Doc. no. 27-6, ¶ 3 (hereinafter "Murphy Aff.").) When he arrived on the scene, he encountered Plaintiff, who reeked of alcohol and had difficulty performing simple tasks like standing and pulling his driver's license from his wallet. (Id. ¶¶ 4, 7. When asked if he was the driver of the truck, Plaintiff cursed at and threatened to kill Dep. Murphy. (Id. ¶ 8.) Dep. Murphy then arrested Plaintiff, charged him with Driving Under the Influence and Terroristic Threats and Acts, and transported him to BCJ. (Id. ¶¶ 9, 11.)

Once at BCJ, Plaintiff became very combative, and it took four officers to place him in a restraint chair in a holding cell. (Id. ¶ 12; doc. no. 27-7, ¶¶ 5-6 (hereinafter "Clark Aff."); doc. no. 27-5, ¶¶ 8-9 (hereinafter "Bush Aff.").) While being restrained, Plaintiff kicked Officer Jerry Clark in the stomach, threatened to kill various deputies, and threatened to kill Dep. Murphy's mother. (Murphy Aff., ¶ 13; Clark Aff., ¶ 7; Bush Aff., ¶ 9.) Because

3

of these actions, Plaintiff was charged with two felony counts of obstruction of an officer as well as battery. (Bush Aff., ¶¶ 19, 25, Ex. B & C.)

Later that morning, Sergeant Jacquelyn Bush brought lunch to Plaintiff and released one of his arm restraints to allow him to eat. (Murphy Aff., ¶ 14; Clark Aff., ¶¶ 8, 10.) She also loosened his leg restraints because he complained they were too tight. (Clark Aff., ¶ 10.) About fifteen minutes later, Ofc. Clark saw smoke coming from Plaintiff's holding cell, and he and Sgt. Bush rushed to the cell to discover what was happening. (Id. ¶¶ 8-9.)

Upon arrival, Ofc. Clark and Sgt. Bush discovered Plaintiff had used his free hand to set fire to the chair restraints with a cigarette lighter and to free one of his legs. (Id. ¶ 11; Bush Aff., ¶ 10; Murphy Aff., ¶ 15.) Ofc. Clark and Sgt. Bush attempted to put out the fire and re-restrain Plaintiff, but Plaintiff kicked Sgt. Bush in the stomach several times. (Clark Aff., ¶ 12; Bush Aff., ¶ 11; Murphy Aff., ¶ 16.) To regain control over Plaintiff so they could put out the fire, Sgt. Bush hit Plaintiff in the face several times with her hand. (Clark Aff., ¶ 13; Bush Aff., ¶ 11.)

Both Sgt. Bush and Plaintiff saw a doctor as a result of this altercation. (Clark Aff. ¶¶ 14-15; Bush Aff., ¶¶ 12-13, Ex. A.) Plaintiff was taken to the emergency room, where doctors noted no swelling or bruising on Plaintiff's wrists, a small bruise on Plaintiff's face, and no symptoms of traumatic injury. (Clark Aff., ¶ 15; Bush Aff., ¶ 13 & Ex. A, p. 2.) Plaintiff was charged with another count of obstruction of an officer and battery for kicking Sgt. Bush. (Bush Aff., Ex. B & C.)

On August 4, 2014, Major John Bush, administrator of BCJ and brother of Sgt. Bush, spoke to Plaintiff about his conduct the previous day. (Bush Aff., ¶¶ 2-3, 14-15.) Plaintiff had previous threatened Maj. Bush's life and insulted his mother on numerous prior visits to

4

BCJ. (Clark Aff., ¶ 3; Bush Aff. ¶¶ 5-6.) During this conversation, Maj. Bush told Plaintiff that, if he had been his former self, he would have killed Plaintiff. (Bush Aff., ¶ 15.) However, he made it clear that he was now reformed and would not actually kill Plaintiff. (Id.) Maj. Bush merely wanted to emphasize to Plaintiff how out of line his behavior had been. (Id.) Plaintiff acknowledged he had acted wrongly. (Id. ¶ 16.) After that interaction, Maj. Bush had no further contact with Plaintiff before he was transferred to the Jefferson County Jail ("JCJ") the next day. (Id. ¶ 17.)

After a hearing on April 22, 2015, Plaintiff's probation was revoked in case number 2010-R-100 and he was sentenced to five years in prison based on the incident related above. Id. ¶ 19, Ex. B., p. 2. Plaintiff was also indicted for misdemeanor D.U.I. and four separate charges directly related to this incident: (1) Terroristic Threats toward Deputy Murphy; (2) Obstruction of a Law Enforcement Officer regarding Deputy Murphy; (3) Obstruction of a Law Enforcement Officer regarding Ofc. Clark; and (4) Obstruction of a Law Enforcement Officer in regard to Sgt. Bush. Id. ¶¶ 22, 25, Ex. C, pp. 5-7. Plaintiff eventually entered an Alford plea to the obstruction of a law enforcement officer counts regarding Ofc. Clark and Sgt. Bush. Id. ¶¶ 24-26, Ex. C, pp. 1, 6-7. The prosecutor dismissed the remaining charges for terroristic threats, obstruction of a law enforcement officer regarding Deputy Murphy, and misdemeanor D.U.I. counts. Id. Plaintiff was sentenced to serve five years concurrent with his sentence for probation revocation. Id.

Plaintiff's medical records show a history of chronic back and left wrist pain stemming from a high-speed motorcycle accident in 2000, along with a history of chronic anxiety and depression. (Doc. 27-3, pp. 5-7; doc. no. 27-4, p. 2.) He had an ORIF surgical procedure in 2010 to place a screw in his wrist. (Doc. no. 27-4, pp. 3-4.)

5

Plaintiff claims that his wrist was reinjured on August 3, 2014, when he was arrested and booked into the BCJ. (See doc. no. 1.) However, he did not claim this injury came from his altercation with Sgt. Bush, but rather from the arresting officers handcuffing him too tightly. (Doc. no. 27-4, p. 5; Bush Aff., Ex. A, p. 2.) Furthermore, when he was offered anti-inflammatories for his pain by the JCJ on October 3, 2014, he refused because they were not the narcotics he wanted. (Doc. no. 27-3, p. 5.)

Plaintiff had another wrist surgery in October 2015. (Id. at 8.) However, the records for that surgery show any recent injury to the wrist was not acute, but rather a non-union where the old fracture was located from the motorcycle accident. (Id. at 4-6; Bush Aff., Ex. A, p. 2.)

Plaintiff has only sought mental health treatment once in prison, in January 2016. (Doc. no 27-3, pp. 9-15.) He indicated he had a personal and family history of mental health issues, and complained of difficulty sleeping due to chronic back, knee, and wrist pain and the discontinuation of pain medication. (Id. at 9, 11, 13, 15.) He made no mention of threats made by Maj. Bush as a reason for his mental health issues. (Id. at 9-15.)

### III. DISCUSSION

#### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B. Defendants Are Entitled to Summary Judgment.**

Defendants contend they are entitled to summary judgment for three reasons: (1) Plaintiff's claim for compensatory damages is barred because he did not sustain more than *de*

*minimis* physical injury; (2) they are entitled to the protection of Eleventh Amendment immunity in their official capacities; (3) they are entitled to the protection of qualified immunity because they were acting within the scope of their discretionary authority, did not violate Plaintiff's federally protected rights, and had no "fair warning" their actions might violate Plaintiff's federally protected rights. (Doc no. 27-2.) Plaintiff opposes the motion based on general allegations that Defendants are lying. (Doc. no. 31.) The Court has reviewed the record and relies only on indisputable facts verified in the record to make its decision.

### 1. Defendants Are Entitled to Summary Judgment in Their Official Capacities.

It is unclear from Plaintiff's complaint whether he is suing Defendants in their individual or official capacities. To the extent he is suing them in their official capacity, Plaintiff's allegations are insufficient to state a claim against Defendants because "the Eleventh Amendment insulates a state from suit brought by individuals in federal court unless the state either consents to suit or waives its Eleventh Amendment immunity." Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989). Arms or agencies of the state are also immune from suit. Alabama v. Pugh, 438 U.S. 781, 781-82 (1978). Georgia sheriffs and their deputies function as arms of the State of Georgia when establishing and administering jail policies and practices. Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga, 400 F.3d 1313, 1324 (11th Cir. 2005); Manders v. Lee, 338 F.3d 1304, 1328 (11th Cir. 2003); Bunyon v. Burke Cty., 306 F. Supp. 2d 1240, 1255 (S.D. Ga.), *aff'd sub nom.* Bunyon v. Burke Cty., Ga., 116 F. App'x 249 (11th Cir. 2004) ("Although Manders involved only the immunity of the Sheriff in his official capacity, its factors are similarly applicable to deputy sheriffs as well.").

Plaintiff's claims exclusively concern the administration of a county jail by deputy sheriffs. Thus, Defendants were acting as arms of the state of Georgia and are immune under the Eleventh Amendment in their official capacity. Thus, Defendants are entitled to summary judgment on any such claims.

> 2. **Defendant Jacquelyn Bush Is Entitled to Summary Judgment in Her Individual Capacity Because She Did Not Violate Plaintiff's Eighth Amendment Rights By Using Excessive Force.**

### a. Overview of the Excessive Force Legal Landscape

"The Eighth Amendment's proscription of cruel and unusual punishments also governs prison officials' use of force against convicted inmates." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). To prevail on an excessive force claim, Plaintiff must satisfy both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation harmful enough to establish a constitutional violation. Id.

*De minimi*s uses of physical force are beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10. Accordingly, not "every malevolent touch by a prison guard gives rise to a federal cause of action," even if it "may later seem unnecessary in the peace of a judge's chambers . . . ." Id. at 9 (citation omitted). However, because injury and force are imperfectly correlated and it is the force used that counts, an inmate "who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Subjectively, Plaintiff must show that the actions taken involved the unnecessary and wanton infliction of pain. See Whitley, 475 U.S. at 319. That is,

9

> [F]orce does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."

Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 319). Rather, the Court must consider "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quoting Hudson, 503 U.S. at 7).

The subjective component analysis narrows the precise inquiry applicable at the summary judgment stage as follows:

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support *a reliable inference of wantonness in the infliction of pain* under the standard we have described, the case should not go to the jury.

Campbell, 169 F.3d at 1375 (quoting Whitley, 475 U.S. at 322).

Because the subjective component is contextual, courts consider the following factors: (1) extent of injury, (2) need for application of force, (3) relationship between need and amount of force used, (4) threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Campbell, 169 F.3d at 1375. Any action taken should be viewed in light of the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security. Hudson, 503 U.S. at 6. For example, use of an appropriate degree of force to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force

10

claim requires consideration of whether immediate coercive measures were taken "in a good faith effort to restore order or prevent a disturbance, and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time").

        **b.**    **Defendant Jacquelyn Bush Applied Minimal Force In a Good-Faith Effort to Restore Order, Not Maliciously and Sadistically to Cause Harm.**

Defendant Bush did not use constitutionally excessive force against Plaintiff. As an initial matter, Defendant used no more than *de minimis* force to subdue Plaintiff. Hitting Plaintiff in the face two or three times is not the sort of force "repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10. Indeed, the small bruise on Plaintiff's face is consistent with the application of *de minimis* rather than excessive force. *Compare* Wilkins, 559 U.S. at 38 ("[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim") *with* Hudson, 503 U.S. at 10 (Plaintiff's injuries including bruises, swelling, loosened teeth, and cracked dental plate were not *de minimis* for Eighth Amendment purposes); Hasemeier v. Shepard, 252 F. App'x 282, 284-85 (11th Cir.2007) (evidence of injury including unconsciousness, cuts, bruises, and broken dental bridge resulting from alleged beating was sufficient to create genuine issue of material fact as to whether officers applied excessive force). Therefore, Plaintiff cannot satisfy the objective component of an excessive force claim.

However, even if Defendant's blows did constitute greater than *de minimis* force, her actions were necessary and not wanton under the five Hudson factors. First, Plaintiff's injury was not severe. When Plaintiff was taken to the emergency room directly after the incident, doctors noted no swelling or bruising on his wrists, a small bruise on his face, and no

11

symptoms of traumatic injury. (Clark Aff., ¶ 15; Bush Aff., ¶ 13 & Ex. A, p. 2.) Despite his claim that he required surgery as a result of this incident (see doc. no. 1, p. 3), his medical records show the injury to his wrist requiring surgery was not acute, but rather a non-union where an old fracture from a previous injury was located. (Doc. no. 27-3, pp. 4-6; Bush Aff., Ex. A, p. 2.)

Moreover, Defendant needed to use force and reasonably did so in light of the circumstances. Defendant and Ofc. Clark were responding to Plaintiff setting fire to his restraints, a dangerous and volatile situation. (Clark Aff., ¶ 11; Bush Aff., ¶ 10; Murphy Aff., ¶ 15.) As they were attempting to re-restrain him and put out the fire, Plaintiff repeatedly kicked Defendant in the stomach. (Clark Aff., ¶ 12; Bush Aff., ¶ 11; Murphy Aff., ¶ 16.) Only after this obstruction of Defendant's attempts to deal with the situation did Defendant strike Plaintiff two or three times. (Clark Aff., ¶ 13; Bush Aff., ¶ 11.) In addition, Defendant only used her hand—not pepper spray, a taser, or a baton—to subdue Plaintiff and restore order. (Id.) Defendant properly used only as much force as necessary to contain a volatile situation, and her force cannot be said to have been applied wantonly.

In sum, Maj. Bush's testimony, Ofc. Clark's testimony, and the medical records all contradict Plaintiff's assertion of excessive force. In light of Plaintiff's active and violent resistance and Defendant's need to act quickly to handle an increasingly dangerous situation, Defendant used a reasonable amount of force to restore order as quickly as possible. Accordingly, as Plaintiff cannot satisfy the objective or subjective components of an Eighth Amendment excessive force claim, Defendant Jacquelyn Bush is entitled to summary judgment.

### 3. Defendant John Bush Is Entitled to Summary Judgment in His Individual Capacity Because His Threats Did Not Violate the Constitution.

Defendant John Bush's threat that if he had been his former self, he would have killed Plaintiff did not violate Plaintiff's constitutional rights. Generally, verbal threats, without physical harm, are insufficient to establish a constitutional violation. See Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (inmate "must allege more than that he has been subjected to verbal taunts[,] [h]owever distressing[,] in order to make a claim that jailers have . . . deprived [him] of his constitutional rights") (internal quotation omitted). However, some courts have recognized "claims of verbal threats . . . as potentially violative of the Eighth Amendment if accompanied by extreme psychological harm." Wilson v. Silcox, 151 F. Supp. 2d 1345, 1352 (N.D. Fla. 2001) (internal quotations omitted).

It is undisputed that Plaintiff suffered no physical harm from Defendant's verbal threats. Moreover, there is no evidence Plaintiff suffered "extreme psychological harm" from Defendant's threats either. While incarcerated, Plaintiff has only sought mental health treatment once, in January 2016, over a year and a half after Defendant made his threat. (Doc. no. 27-3, pp. 9-15.) During his meeting with the mental health counselor, Plaintiff only discussed a personal and family history of mental health issues and difficulty sleeping due to long-term chronic back, knee, and wrist pain and his pain medication being discontinued. (Id. at 9, 11, 13, 15.) Indeed, Plaintiff never once mentioned Defendant or his threat, much less indicated it was contributing to his psychological problems. (Id. at 9-15.)

Accordingly, Plaintiff cannot show he suffered either the physical or "extreme psychological" harm required to establish a constitutional violation. Thus, Defendant John Bush is entitled to summary judgment on this claim.

### 4. Defendants' Claims Regarding Qualified Immunity and Damages Are Moot.

Defendants argue they are entitled to qualified immunity and that even if a constitutional violation is found, Plaintiff is limited to recovery of nominal damages rather than the compensatory damages he seeks under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), ("PLRA"), because his injuries are *de minimis*. (Doc. no. 27-2, pp. 6-16.) Because Defendants are entitled to summary judgment on the substantive merits of their claims as discussed *supra*, the issues of qualified immunity and damages are ultimately moot and the Court will not address them.[1]

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED** (doc. no. 27), final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 28th day of April, 2017, at Augusta, Georgia.

*[signature]*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[1] The Court does note that if it were to find Defendant Jacquelyn Bush's application of force on August 3, 2014 was violative of the Eighth Amendment, a qualified immunity defense would not be available. See Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002).